IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LIMITED BRANDS, INC., *et al.*,

        Plaintiffs,

vs.                            Case No. 2:03-CV-1268
                                        Magistrate Judge King

UTI United States, Inc.,

        Defendant.

## OPINION and ORDER

      This is a diversity action, removed to this Court, in which Plaintiffs seek monetary damages in connection with certain merchandise that was allegedly lost during the course of shipping by Defendant.  With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on Defendant's motion for summary judgment, Doc. No. 17.

## I.      Background

      Plaintiff Mast Industries, Inc. [hereinafter "Mast"] is an affiliate of Plaintiff Limited Brands, Inc. [hereinafter "Limited"] [collectively hereinafter "Plaintiffs"] with the responsibility of buying goods for Limited's affiliated entities.  *Complaint,* at ¶ 2; Deposition of Sharon Armstead [hereinafter "Armstead Deposition"], at pp. 7-8, 16, attached as Exhibit 1 to *Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment* [hereinafter *"Plaintiffs' Memorandum in Opposition"*].  Mast also purchases finished products and sells them directly to third-party

businesses.  Armstead Deposition, at p. 7.

In October 2002, Mast entered into an agreement with a third party retailer, Sak's Fifth Avenue, whereby Mast agreed to purchase and deliver 312 cartons of garments [hereinafter the "Merchandise"].  Deposition of Minerva Calderon [hereinafter "Calderon Deposition"], at p. 34, attached as Exhibit 2 to *Plaintiffs' Memorandum in Opposition*; Plaintiffs' Interrogatory Answer #4, attached as Exhibit 4 to *Plaintiffs' Memorandum in Opposition*.  As the garments were manufactured in Italy, Defendant UTi, United States, Inc. [hereinafter "UTi"] was retained by Mast to arrange for the transportation of the Merchandise from Italy to the United States.  Calderon Deposition, at pp. 50-51.  UTi thereafter hired UTi Italy, Inc. [hereinafter "UTi Italy"], a separate and distinct corporate entity, to arrange for the transportation of these goods. Foley Affidavit, at ¶ 12, attached as Exhibit 1 to *Defendant's Motion for Summary Judgment*.  At no time did UTi consolidate the cargo, transport the cargo or have possession of the cargo.  *Id.*, at ¶ 11.

On October 24, 2002, while the Merchandise was in Genoa, Italy, UTi Italy loaded the merchandise into an ocean container that was then placed on an ocean vessel named the "COSCO Norfolk" for transport from Italy to New York.  UTi Italy appears as the shipper on the Master Bill of Lading issued by the ocean carrier, COSCO.  See Exhibit 2, attached to *Defendant's Motion for Summary Judgment.*  After the Merchandise reached the United States and was offloaded from the ship, a trucking company named Cargo Connections Logistics Corporation [hereinafter "Cargo Connections"] picked up the Merchandise for delivery to Sak's Fifth Avenue.  Armstead Deposition, at pp. 74, 76.  Upon receipt, Cargo Connections inspected and counted the cartons and discovered that 124 cartons were missing.  As a result of the short delivery, Mast refunded Sak's Fifth Avenue $100,116.80 for the undelivered Merchandise.  Plaintiff's Interrogatory Answer #4.

On November 14, 2003, Plaintiff filed the present action in state court, alleging that UTi is responsible for the lost Merchandise.  Thereafter, this action was removed to federal court pursuant to 28 U.S.C. § 1441(d).  On March 16, 2005, UTi filed a motion for summary judgment, arguing that as a freight forwarder it is not responsible for the loss.  In the alternative, UTi argues that if it is responsible for the loss, its liability is limited to $50.00 pursuant to a liability limiting invoice.

## II.     Standard for Summary Judgment Motion

The standard for summary judgment is well established.  This standard is found in Fed. R. Civ. P. 56, which  provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Pursuant to Rule 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ."  In making this determination, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317,  322 (1986).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could

3

reasonably find for the opposing party.  *Anderson*, 477 U.S. at 251.

### III.     Application

#### A.     Freight Forwarder v. Carrier

A freight forwarder is an entity that makes arrangements for the movement of cargo at the request of its client.  A carrier, on the other hand, is an entity that is directly involved in transporting the cargo.  *Prima U.S., Inc. v. Panalpina,* 223 F.3d 126, 129 (2nd Cir. 2000).  "Unlike a carrier, a freight forwarder does not issue a bill of lading, and is therefore not liable to a shipper for anything that occurs to the goods being shipped."  *Prima U.S., Inc.,* 223 F.3d at 129.  A freight forwarder is not liable to the shipper so long as its role is limited to arranging for transportation.  *Id.*; *United States v. American Union Transport,* 327 U.S. 437, 442-43 (1946) (independent forwarders "assume no responsibility for the transportation of goods").

Of course a party that classifies itself a freight forwarder might in fact be performing the functions of a carrier, in which case function would govern over form.  *Prima U.S., Inc.,* 223 F.3d at 130 n.1 (citing *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Acme Fast Freight, Inc.,* 336 U.S. 465, 467 (1949)).  However, the burden of demonstrating any deviation from what freight forwarders normally do in the maritime context rests upon the party attempting to show such deviation.  *Id.*  Factors to be considered in determining whether a party acted only as a forwarder or as a forwarder-carrier include (1) the way the party's obligation is expressed in documents pertaining to the agreement; (2) the history of dealings between the parties; (3) issuance of a bill of

lading; and (4) how the party made its profit.[1]  *Zima Corporation v. M.V. Roman Pazinski,* 493 F. Supp. 268, 273 (S.D.N.Y. 1980).  No one of these factors, however, is determinative.  *Id.*

If it is determined that a party is a freight forwarder, that party's liability is limited to damages caused by its own negligence, including any negligence in choosing a carrier.  *Id.,* at 274; *Scholastic, Inc. v. M/V KITANO,* 362 F. Supp. 2d 449 (S.D.N.Y. 2005).  In the absence of negligence, the freight forwarder is not liable for lost or damaged goods.  *Id.*  "[W]hen a freight forwarder selects someone to perform transportation services, that selection fulfills the forwarder's obligations in the absence of proof that the selection itself was negligent."  *Prima U.S., Inc.,* 223 F.3d at 130.  On the other hand, if the party is determined to be a forwarder who contracts to deliver the goods to their destination, as well as or instead of merely arranging for their transportation, then he is liable as a common carrier for loss or damages to the goods, regardless whether the fault for damages lies with that forwarder or with the underlying carrier actually transporting the goods.  *Zima Corporation,* 493 F. Supp. at 274.

## B.     Application

In the case at bar, UTi was a freight forwarder, hired by Mast to arrange for transportation and incidental services, and to select the companies that would perform those tasks.  UTi did not issue a bill of lading and it did not consolidate the cargo.  It was hired by Mast simply as a freight forwarder to arrange for the transportation of the merchandise from Italy to New York.  In fact, UTi

---

[1]If a party acts as "agent of the shipper... procuring transportation by carrier and handling the details of shipment" for fees "which the shipper paid in addition to the freight charges of the carrier utilized for the actual transportation" then the party would be liable only as a forwarder.  *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. V. Acme Fast Freight, Inc.,* 336 U.S. 465, 484 (1949).  If the party "picked up the less-than-carload shipment at the shipper's place of business and engaged to deliver it safely at its ultimate destination...[charging] a rate covering the entire transportation and [making] its profit by consolidating the shipment with others to take advantage of the spread between carload and rates," while the shipper "seldom if ever knew which carrier would be utilized in the carriage of his shipment," then the forwarder would be liable as a carrier.  *Id.*

never had actual possession of the Merchandise.

The material facts in this case are not in dispute.  Plaintiffs admit that UTi did not issue a bill of lading for the Merchandise[2] and that UTi is not listed as the shipper on the master bill of lading issued by the ocean carrier.  Armstead Deposition, at pp. 32, 35.  The parties also agree that UTi never had actual possession of the goods.  Armstead Deposition, at pp. 22-23; Calderon Deposition, at p. 51.  Furthermore, it appears that the invoice tendered to Mast by UTi contained terms and conditions that clearly defined UTi's role as a freight forwarder, rather than as a carrier.[3] *See Defendant's Motion for Summary Judgment,* at p. 5.  Defendant has shown that, even if all inferences favorable to Plaintiffs are drawn from these undisputed facts, it remains that Defendant did not undertake to act as a common carrier with respect to the Merchandise.

Furthermore, Plaintiffs offer no evidence that Defendant committed any wrongful or negligent act with respect to the retention of logistics providers, including UTi Italy.  Armstead Deposition, at pp. 61-62.  It appears that UTi took reasonable measures in hiring UTi Italy and, as a mere facilitator, is not responsible even if UTi Italy was negligent in handling the Merchandise.

---

[2]Armstead Deposition, at pp. 19-20, 41, 75; Calderon Deposition, at p. 40.

[3]UTi argues that the language included on the reverse side of the invoice explains that UTi does not warrant the services of third-parties.  This Court notes, however, that UTi failed to attach a copy of the reverse side of the invoice as part of the record.  Instead, UTi merely quotes the liability limiting language within its *Motion for Summary Judgment.  See Defendant's Motion for Summary Judgment,* at p. 5 ("...[N]or does company assume responsibility or liability for an any action(s) and/or interaction(s) of such third parties and/or its agents, and shall not be liable for any delay or loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of a third party.").  Plaintiffs, however, have made the front side of this invoice a part of the record.  *See* Exhibit 9, attached to *Plaintiffs' Memorandum in Opposition.*  The language at the bottom of the invoice reads, "ALL SHIPMENTS AND SERVICES ARE SUBJECT TO OUR STANDARD TERMS AND CONDITIONS LISTED ON THE REVERSE SIDE OF THIS INVOICE.  WE ARE NOT RESPONSIBLE FOR PERFORMANCE OF THIRD PARTIES WHO MAY BE ENGAGED IN CONNECTION WITH YOUR SHIPMENT."  *Id.*

### 1.     Airfreight Forwarder Service Agreement

In its memorandum in opposition, Plaintiffs argue that UTi orally agreed to be responsible for any loss of goods for which it acted the freight forwarder, thereby assuming the liability of a carrier.  Plaintiffs contend that the terms of this agreement are reflected in the Airfreight Forwarder Service Agreement [hereinafter "Service Agreement"], allegedly entered into between Mast and UTi.  Armstead Deposition, at p. 48.  Plaintiffs allege that Mast and UTi orally agreed to extend applicable provisions of this Service Agreement to other shipping arrangements, including transportation by ship.  *Id.*  However, there is no evidence that a signed Service Agreement was in effect in 2002;[4] even if such a Service Agreement were in effect, it would, by its express terms, apply only to air transport, not ocean transport.  Furthermore, Plaintiffs offer no evidence of oral statements regarding UTi's liability for ocean transport; even if UTi made such oral representations, then by Plaintiffs' own admission, this action would be subject to the terms of the Carriage of Goods by Sea Act, [hereinafter "COGSA"], and under COGSA would be time barred.[5]

### 2.     NVOCC Liability

Plaintiffs also argue that UTi is liable as a non-vessel-operating common carrier [hereinafter "NVOCC"].  "An NVOCC is an intermediary between the shipper of goods and the operator of the

---

[4] Mr. Armstead testified that he has never seen a signed Air Forwarder Agreement prior to 2003.  Armstead Deposition, at p. 56.

[5] Under COGSA, "the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered."  46 U.S.C. § 1303(g).  "Some courts have concluded that 'delivery' occurs when cargo leaves a ship's slings, irrespective of whether it is placed in the hands of the consignee (or its agent).  Other courts have held that deliver occurs only when the consignee has a reasonable opportunity to inspect the goods for damage."  *Servicios-Espoarma v. Industrial Maritime Carriers, Inc.,* 135 F.3d 984, 987-88 (5th Cir. 1988).  It is undisputed that the Merchandise in the case at bar was delivered, and that Plaintiff had been made aware of the alleged shortage, no later than November 6, 2002.  Calderon Deposition, at p. 53, 79.  This suit was not commenced until November 14, 2003.  Since Plaintiff did not commence proceedings within one year, even if this Court were to find that UTi was a carrier subject to COGSA, the action would be barred by the applicable statute of limitations.

vessel that will carry the goods." *All Pacific Trading, Inc. v. Vessel M/V Hanjin Yosu,* 7 F.3d 1427, 1429 (9th Cir. 1993). An NVOCC does not merely arrange for transportation of goods, but takes responsibility of delivering goods by issuing a bill of lading. *Scholastic, Inc.,* 362 F. Supp. 2d at 449. An NVOCC is strictly liable for any damage caused to cargo that has been shipped pursuant to the bill of lading issued by it. *Zen Continental Co., Inc. v. Intercargo Ins. Co.,* 2001 WL 282688 (S.D.N.Y. 2001). An NVOCC is a carrier in relation to the shipper, although it is a shipper in relation to the vessel. *International Fire & Marine Ins. Co., Ltd. v. Silver Star Shipping America, Inc.,* 951 F. Supp. 913 (C.D. Cal. 1997).

In the case at bar, it appears that UTi Italy, not UTi United States, served as an NVOCC. The issuance of a bill of lading creates a contractual relationship between the NVOCC and the ocean carrier, pursuant to which the NVOCC is regarded as the shipper. *American Home Assurance Co. v. TGL Container Lines, Ltd.,* 347 F. Supp. 2d 749 (N.D. Cal. 2004); *All Pacific Trading, Inc.,* 7 F.3d at 1430. In this case, UTi Italy is listed as the shipper on the Master Bill of Lading issued by the ocean carrier, COSCO. Exhibit 2, attached to *Defendant's Motion for Summary Judgment.* "Conversely, an NVOCC...is considered a carrier in its relationship with the shipper of the goods under COGSA." *Yang Ming Marine Transport Corp. v. Oceanbridge Shipping International, Inc.,* 48 F. Supp. 2d 1049 (C.D. Cal. 1999). Here again, it is undisputed that UTi Italy was the issuer of the transport document. Armstead Deposition, at p. 75. Hence, while UTi Italy may be liable as an NVOCC, UTi United States is not.[6] Because UTi was neither a carrier nor an NVOCC, it will not be held responsible to Plaintiffs for the lost Merchandise.

---

[6] Plaintiffs argue that UTi is responsible for the actions of UTi Italy. However, it is undisputed that UTi United States and UTi Italy are separate legal entities.

**WHEREUPON**, Defendant's motion for summary judgment, Doc. No. 17, is **GRANTED**.

The Clerk shall enter **FINAL JUDGMENT.**

**IT IS SO ORDERED.**


July 8, 2005                                       *s/Norah McCann King*
                                                  Norah M<sup>c</sup>Cann King
                                                  United States Magistrate Judge